The next case on for argument is Williams v. Korines, Smith v. Kober et al. My name is Michael Martin. I'm the Executive Director of Lincoln Square Legal Services Counsel to Appellant Mr. Daniel Williams. With the court's permission, I ask that Katherine Ann Boyd-Skipsey, a third-year law student at Fordham Law School and a legal intern at Lincoln Square Legal Services, address the court on behalf of Mr. Williams today. May it please the court. My name is Katherine Ann Boyd-Skipsey. I'm a legal intern at Lincoln Mr. Williams was punished with six months in solitary confinement for the possession of family photographs. Photographs that he was permitted to possess by more than a dozen correctional facilities in over ten years. This court should vacate the District Court's judgment for two reasons. First, New York State Department of Corrections Rule 105.13 is unconstitutionally vague as applied pursuant to Chadden v. Coombe and Farid v. Allen. Two cases in which this court promulgated the test for as-applied challenges. Second, Mr. Williams was denied due process when he was punished for conduct that was previously permitted without a fair warning and because the correctional hearings that led to this punishment were procedurally deficient. To my first argument, Rule 105.13 is unconstitutionally vague as applied. What demonstrates that the materials were previously allowed? Is there a record at which the officials said these are permissible materials? No, Your Honor. There isn't an affirmative permit given to Mr. Williams. However, the fact that he was transferred to pretty much every maximum security prison and that his belongings were searched regularly by every prison when he was transferred and several times once he was there leads us to conclude that it was unreasonable to say that his belongings... Doesn't seem to me to lead very persuasively to that conclusion. I mean, he had large numbers of photographs and you're asking us, it seems to me, to assume that every photograph was inspected carefully to see whether somebody is holding his hand in this position and that they saw exactly the things that led to the discipline in this case and saw them and said, oh, that's not a violation. That is... I don't know what reasoning it would be, but these are permissible. These are permissible and therefore he was able to rely on that. Your Honor, we claim that this reliance was reasonable because the fact that he was permitted, by mistake or not, to carry these photos around for 10 years, in his mind, and this goes to notice, these photos were permissible. The rule itself does not provide notice to Mr. Williams that these photos could have been considered gang-related material. First, the inference about a third-party's interpretation of what gang-related means and what Mr. Williams' photos depicted. This requirement is in the mind, not in the rule. Mr. Williams could not have speculated as to what any correctional officer would have interpreted of any third-party inmate's opinion of this photograph. I take it it's not what the corrections officer thinks, it's whether it satisfies this rule. The correctional officer could be mistaken in thinking that this is what would give rise to an inference that this is gang-related material in the mind of an inmate, right? It's a question of what in the relevant community would be taken as gang-related material. That is correct, Your Honor, however... That's one inference. It's an inference, but it's one and the fact that in this case, the correctional officer... I don't want to be overly technical here, but what you're saying is that the general standard of vagueness is that the rule has to be capable of being understood both by the person who is subject to the rule and also by enforcing agents like police and courts and others. But that's a separate kind of question. It all goes to the underlying question. This two-step inference thing just doesn't really... it seems a little theoretical. The issue is, does the definition in the rule give adequate notice to people of what is gang-related? And I take it your position is that because it asks what would the average prisoner interpret as gang-related material, that's what makes it vague? No, Your Honor. People's interpretations of what is a gang is inherently informed by assumptions and biases. This is not an objective test that an inmate could have notice to. That's a separate vagueness. One vagueness is, do we know that this particular material relates to gangs? Then you have a separate argument that the definition of gang, which is a group of individuals having a common identifying name, sign, symbol, or colors, who have individually or collectively engaged in a pattern of lawlessness in one or more correctional facilities or that are generally recognized as having engaged in such a pattern in the community as a whole. That's the definition. And you say that Bernie Madoff and company have a common sign, symbol, or colors? No, Your Honor. No, you don't. I mean, you do, actually, in the brief, but you don't mean that. And you use examples of how gang definitions have been used on the street. But is there any indication in prisons that the Aryan nation doesn't count this is only applied against black people or Latinos? I mean, there are white gangs that are of considerable interest to prisons and prison authorities, aren't there? Yes, Your Honor. However, Mr. Williams could not have had noticed that his family photographs would fall under the definition of gang. Merely because... No, no, no, wait, wait, no. It's whether crips fall within the definition of gangs. That's the gang vagueness issue. Then you have a separate issue about whether anyone would know that these photographs would make a typical inmate of a prison think the man who is having or displaying these photographs is a member of the Crips. Those are two separate issues. Correct, Your Honor. We do not dispute that the Crips would fall under this rule, and that's why we're not challenged this rule facially. Okay, so the business about gangs is not really relevant, because you agree that whatever is or isn't a gang, the Crips are a gang, and the Crips are what the state says these pictures reflect. So now we're just talking about what I think is indeed the main issue in the case. It's not about what's a gang and what's not a gang, and how do we know what's a gang and what's not a gang. It's about how do we know that these photographs, which alas, from the appendix, I can't even see for sure that they all have people in them, that these photographs depict something that would indicate Crip allegiance to a typical inmate, right? That's the issue. Yes, Your Honor, and correctional officers concluded that Mr. Williams was a member of the Crips, and that therefore these pictures must have been gang-related. No, not must have, that it's relevant to the determination. Now, I mean, I agree, there are all kinds of issues floating around in this case, not all of which are raised by the particular issues that you present in your brief. But the relevance of whether he's a Crip has to do with how this is going to be interpreted. I don't know how they know or think or why they believe that he's a Crip. It's not in the record, as far as I know, what is the basis for that belief, and that's a problem. Exactly, Your Honor, it's not in the record, and if this question hinges on whether Mr. Williams is a member of the Crips, then that's a material fact, that's an issue, and thus needs to be remanded for a trial. Why isn't it just that the material in question that was seized, whether he is or is not a member of the Crips, leads to an inference being drawn that Mr. Williams is a member of the Crips? Your Honor... He could be making, I could be going around like this making the C sign, I can't remember, it means something else up in Vermont maybe, but somebody might think I was a member of the Crips, right? That may be so, but... Well, that's gang related material, so I shouldn't talk about me, or they could draw an inference that I'm a member, and therefore that's a problem within the facility. That may be so if the photograph is clear and that officers, the only three officers who have challenged this photograph in 10 years, could agree on the fact that Your Honor is using the C sign. Here, not one officer could agree on what this picture is depicted. They kind of agree on whether some of these pictures depicted hand signals at all, and their testimony is either reason why Mr. Williams spent six months in solitary confinement. This evidences the vice or vagueness of the rule, because it gave on-cabin discretion to officers to use a photograph, and I respectfully ask Your Honors to turn... One of the difficulties, excuse me, that I had with the brief and the appendix taken together is that it was very difficult for me to trace through your argument that there is, I'm not sure if you're making it this strongly, that there's not a single picture that all three witnesses said that man on the left in that photo is making a sign that is a crypt sign. Can you do that for us? That is, can you walk us through your best... I guess it's hard to ask you to prove the negative, because you have to go through three witnesses and nine photos. Give me your best one in the other direction, where there's a dispute among the officers as to who is doing what. Yes, Your Honors. If you could respectfully turn to page 100 and... 15 of the appendix of the appellant's brief, please. Okay. Photo number two. Okay, photo number two is the three, there are three men, all wearing hats. That's the one on the bottom, the bottom one, on A115. Is that right? Yes, Your Honor. No, it's the one above. The one above, the top one. Okay. The two men and the boy. Yes. What page are you on? 115. 115 of the appellant's brief appendix. On that photograph, Officer Healy, as per page 131 of the appendix, he testified, looks like a guy trying to spell a gang sign, but don't know if it is a gang sign. On the same photograph, Officer Coover, who testified on page 148 of the appendix, said that this guy was flashing a C. Officer Isabella, on the same photograph, on page 175 of the appendix, testified, looks like he's flashing a six-pointed star. And this is just photo two. On photo nine, for example, on page 111, and 19, excuse me. Okay, take it slow because we have to find it and then see what we can see or not see. I'm sorry, it's not 111. It's 119. 119, sorry. Okay. Photo nine is the picture on the top. That's the kids. It's a party of 12-year-olds. The kids around a birthday cake. Yes. To that photograph, Officer Coover testified on page 148, I am not confident enough to say I see any hand gestures. Looks like a bunch of kids at the birthday party. But the one kid on the right looks like he has one hand up in the air. When doing this. Yes. That's it. That's all these officers said about this photograph. On page 117, photograph six. The photograph on the top. On the bottom, excuse me. The bottom is, there's no people in that. That's right. And the only one who testified to this photograph was Officer Coover on page 148, and he said, I cannot see anything wrong with this photograph. And on page 121. But that's a little different. Not every photograph was found to be gang-related, right? Oh, this one was? Yes. These photographs were the evidence that was provided in the second hearing that led to Mr. Williams' affirmation. So these are, all of these photos in this section of the appendix were found to be gang-related? Yes. And you're saying that the bottom picture on 117, the only officer who mentioned it said he didn't see anything gang-related? The ice cube is blue, could be a CRIPS issue. There's not even hand signals on these pictures. And one of the photos that struck me the most on page 121, photo eight. That's the photo on the top. The photo on the top that looks like a little girl. It depicts a little girl wearing beads on her ponytail. To that photograph, Officer Coover claims that this photo was gang-related because, and I quote, she's got blue beads in her head, as per page 157. These are the reasons why Mr. Williams spent six months in solitary confinement. So that picture is not, there's nothing about what the gentleman with her is doing with his hand, which I can't even see well enough to tell what he, if anything, is doing. But I can see there's what looks like a hand. Well, Officer Coover said, again on page 157, not confident enough to say there are hand gestures. And Officer Healy on page 133 of the same photograph said, nothing wrong with photograph. Thank you, that's very helpful. This, I also have to note that this is the second reversal of a correctional hearing in this case. Director of Special Housing and Inmate Disciplinary Program, Venezuela, reversed the second hearing determination. These officers' testimonies, based on questions as to culpability, not procedural issues, but as to Mr. Williams' innocence. But Mr. Williams still spent six months in solitary confinement, and a typical and significant punishment based on family photographs, photographs that were permitted by mistake or not. In Mr. Williams' mind, these photographs were fine, and all he's asking today is for an opportunity to conform. What do you say about, or he's asking for his money? Well, we're asking for this court to remand, to determine whether these officers' interpretations were reasonable, and as per Farid versus Ellen, this is what happened, and the lower court said- Actually, your point is, you might not be here if at the end of this hearing, they said, look fella, these pictures, we're going to send them back to your mom, because they can't be in the prison. You wouldn't be here. If they hadn't- He got six months in the shoe- That's right, your honor. And it was only afterwards, after he had irremediably suffered those six months in harsh conditions, that the state actually decided that he really shouldn't have gotten that. That's right, your honor. All he wants today is an injunctive relief, as this court issued in Chatton versus Skoom, stating that this rule was- No, but that's not all he wants, right? Unless it is. Are you abandoning the claim for damages? No, no. Definitely not. We still have to consider the qualified immunity issue with respect to a damages claim, as to whether, even if we think that this regulation is vague as applied to him, whether a reasonable officer, particularly given that a panel of this court had previously found the same regulation not vague, That's right, but I do want to notice that on Booker versus Malley, that Mr. Booker had noticed, because he had been previously punished under this rule, for similar photographs. Photographs that depicted adult inmates dressed from head to toe in the color red, the color of the blood, and his argument was that the hand signals that were depicted in this photograph could also be considered cultural expressions. We're saying here that Mr. Williams did not have noticed, based on the language of the rule, that his nephew's birthday party could be considered gang-related material. This evidences the vice or vagueness of this rule. It allowed an unreasonable interpretation of this photo to punish an inmate, at least on this fact. In Booker v. Malley, the district court, the magistrate judge, was affirmed very briefly by a finding that agreed substantially with everything that was said in the district court. And in response to the same kind of challenges you're making, the district court had said that on the question of whether the definitions of the forbidding rule are too vague, the district court rejected that on the grounds that it is quite clear, and I'm reading from the district court magistrate judge opinion, that according to the rule, that a gang sign is something that another inmate would recognize as creating an inference of a particular gang affiliation. And that was a reference to the language in the note that says that if observed in the inmate's possession, this material could result in an inference being drawn about the inmate's gang affiliation. That's right, your honor. That's what the court relied on. The district court said that, and this enforces the third... So I want to ask you a question about that, something that you haven't raised in your argument, which is that this definition, this definition that the court relied on in order to conclude that there are limiting aspects to gang, to printed or handwritten gang or gang-related materials that narrow it to this concept of resulting in inference being drawn about gang affiliation, that applies only to written material. Written material, at least arguably, doesn't include photographs. In the Booker case, it was photographs, and in this case, it is photographs. So it seems to me you have at least an argument available to you that the provision that the court relied on in Booker v. Malley, the provision about narrowing it to materials that would support an inference of gang affiliation that the court relied on for the conclusion that it's not too vague, that has no application to photographs because it applies only to written materials, and photographs are not written materials. That's correct, and Mr. Williams did raise that issue in his, per se, brief, that these photographs cannot even fall under the rule because it wasn't written material. You have not argued it before us. We believe it's part of the record, and I believe it's in the brief. I haven't raised it today because… You don't raise it in your brief. Is that correct? Is the argument that photographs don't fall under the rule or that photographs are not subject to the limiting definition that the prior Second Circuit panel relied on to say the rule was not vague? Because the rule does say on its face, it's not limited to printed or handwritten materials. It says that an inmate shall not possess, distribute, or use gang insignia or materials, which is not limited to written materials. Now, that may be vaguer because it's not subject to the limiting construction in the note, which gets picked up by the prior panel. I think that's the question. That's true, Your Honor. The language of this rule is unclear at various levels. And for this… What I'm asking you is… Well, one of the things I'm asking you is, it's my impression that you have not raised this point, that the language about could result in an inference being drawn. That language, which the Booker Court relied on as the basis of its rejection of the vagueness challenge, that language, that narrowing language, doesn't apply to photographs. It applies only to written materials. So with respect to photographs, what is prohibited is gang insignia or materials. Printed or handwritten gang-related materials. That's right, Your Honor, but I believe that the court in Booker did held that the photographs were a violation of the rule. Yes, but it didn't confront the argument. That the argument that we're talking about right now, that the note that applies this limiting requirement, that it be the kind of thing that supports an inference of gang membership, is not applicable to photographs. So this is an argument that it seems to me is available to you to strengthen your argument of unconstitutional vagueness. But I don't think you've made it, at least to us you haven't made it. You may be correct, Your Honor. I don't recall if it's specifically mentioned in the brief. I recall Mr. Williams raising it in his own pro se brief. A pro se brief submitted to us? I'm sorry? A pro se brief submitted to us or below? Below. Yeah, I didn't think there was a separate pro se brief to us. Okay. Yeah. I will be asking your adversary about that. Thank you. Thank you. You've reserved two minutes for rebuttal. Mr. Ginsberg. May it please the Court. Fair notice was provided here because of two basic propositions. Number one, as there was no factual dispute below, plaintiff's photos are fairly viewed as depicting Cripps hand signals, in some cases being made by people who are wearing Cripps colors. All of them? No, not all of them. Why are all of them, Steve? Well, all of them were initially confiscated by Officer Kober, 16 photos in all. Those were presented at the first hearing. I believe eight of those were found to be gang-related, as the hearing officer found. And if you look at the hearing officer's decision, docket number 45-4 at 9, the hearing officer directs the return to Mr. Williams of all of the other photos. I think there might be some factual dispute as to whether the other photos actually did get returned. Is that a problem if they didn't? Well, I suppose it could be a, not a vagueness problem, but I suppose it could be a due process problem that these photos evidently were lost. Well, that would be a different, it's not a question of whether it's a due process problem or a vagueness problem, it's a question of is that challenged in this lawsuit at all. In other words, he could presumably have some kind of lawsuit, state or federal, to say my property was taken from me, adjudicated not to be problematic, even directed to be returned, but it never was, and so you owe me damages for that. But that's not what's at issue in this lawsuit. It's certainly not primarily at issue, although in fairness to the other side, I think they do raise that issue somewhat. But that was dealt with below. The magistrate judge in footnote two of her opinion found that that particular, excuse me, of his opinion, found that that particular claim was not exhausted. That was grieved to the superintendent level, but it wasn't subsequently. That's not before us in any way. And there was no subsequent objection to that failure to exhaust finding. So that's not preserved. So can I get to, the first hearing is one thing, but of course, the first hearing was reversed on procedural grounds. And I thought that both sides had implicitly or explicitly agreed that whatever happened wrong at the first hearing is now mooted because there's a second hearing that became the operative validation, as it were, of his six months in shoe. So at the second hearing, does the hearing officer say which photographs are the ones that give rise to the sanction? I don't think the record is explicit. First of all, I just want to take some issue with the premise of your question. I'm not sure the parties agreed that what happened at the first hearing is moot for right now for vagueness in 1983 purposes. By the time of the second hearing, the six month sanction had already been served. And the second hearing did not add any new sanction. It did preserve the guilty finding, if you will. But it was a time served sanction. And then, of course, after the second hearing, that underlying guilty finding was itself expunged by Doc Suos-Ponte. So there's really no prejudice coming from the second hearing itself. I see. I mean, it's an interesting question. What we are, if we're reviewing anything, maybe we're not reviewing anything. Maybe we are dealing with, in effect, a kind of as-applied challenger to the regulation itself that – and the hearing is only relevant insofar as it shows how this got applied. And maybe both hearings count then. Yeah. But all this was prefatory to – I want to get to – have you do the kind of exercise that Ms. Boies-Gibson did at the end of her argument. Can you identify any photograph that was specifically found by either hearing to be an example of gang signs and take us through how the officers who testified – a gang photo? That's going to be – I will answer that. I want to take you through that. That's going to be hard to do for a reason that has nothing to do with plaintiff's fault. The record here is, I'd say, not the state's finest hour of assembling a summary judgment record. And in terms of the pictures, if you look – not necessarily in plaintiff's appendix, but in the actual summary judgment papers, the pictures that are in there are ones that are numbered. There's, I think, 11 pictures in there. Sixteen were actually presented. Not all of them are in the record. The numbering that is in the record is the numbers from the first hearing, not the numbers from the second hearing. So in terms of – and not only that, the second hearing numbers don't appear anywhere else in the record. So playing that sort of – that sort of tracing exercise is going to be tough to do. I will say – I appreciate that, and I also appreciate that it's not – certainly not clear to me what the implications are given – about what could have or should have been done at the summary judgment stage. But just in terms of understanding how the rule operates, it would be very helpful to have some idea of what's like the clearest example here, if such could be said. And I recognize we're prejudiced in all sorts of ways because, as I understand it, the first hearing had the actual photographs. MR.  That's right. MR. WELLS. The second one had color reproductions of the photographs. But by the time it gets to the district court, both of those color versions have disappeared. And what we have in the record are maybe slightly better, at some stage, first-generation black and white photocopies of either the original photos or the color photographs – color reproductions, I don't know. And by the time they get into the appendix, half of them, you can't see anything at all. But I want to – I just want to understand – show me a really good gang sign in here that the people who testified said gang sign. MR. Sure. I think the best example is – well, it's numbered photograph number two in the second hearing. I know that because if you look at the second hearing testimony, you've got – MR. Because they described it. MR. Right. Exactly. Although some of these descriptions are not unique. They arguably fit a couple of photos. If I – for illustrative purposes, I don't know if this can be DNA-tested for this particular photograph. If you look at appendix 121, and if you look at the bottom photo on that page, it's actually – MR. It's actually upside down. MR. It's upside down. So turn it around, right side up, and you can see – MR. I have a good fortune that two of the gentlemen are wearing light-colored clothing.  Yes. MR. And they are dark-complected people so that their hands are very visible against the light-colored clothing. MR. I think that's right. And the gentleman not in the center but off to the side wearing the white shirt – or the shirt that appears as white who's off to the side – he can be seen making what both Officer Kober and Teacher Isabella separately testified was the C's over B's sign, which is elevating one of his hands – MR. The left hand that's higher. MR. I believe – yes, I think his – yes, his left hand – yes, that's right, in a C posture, and then sticking out the fingers of his other hand almost as if to make a B and positioning the C higher than the B to illustrate the Crip's dominance over their rival bloods. Now, to be sure, I do want to get back, though, to the summary judgment posture of this case. If plaintiff had disputed below as a factual matter that his photos cannot be fairly viewed as depicting Crip's hand signals, I think we would be hard-pressed to defend a summary judgment ruling in our favor for all the reasons why this sort of traceability is exceedingly difficult to do. But this is a summary judgment proceeding, and we have that factual gap below in the underlying docs-administrated proceedings, the first proceeding and the second proceeding, and then again in the material specifically prepared for this federal case. There is no factual dispute that, as a factual matter, at least a critical mass of these photographs can fairly be viewed as depicting Crip signals. So then the question is, is it – does an inmate who sees these photos, which can be so viewed, could he fairly infer that the plaintiff has some Crip's allegiance or another? And yes, he fairly could. I think when Judge Hall was getting to it in his colloquy with my friend, the thought is that, hey, this guy likes to keep photos depicting Crip symbols, so he must be a Crip supporter or backer or even member. He's just a friend of lots of people who are Crips or something like that. That's true. That is another inference that could be drawn. The inference here doesn't have to be – to fall under the rule doesn't have to be an invariable inference. It doesn't have to be the inference subjectively intended by the person possessing the photographs or the people posing for the photographs. It has to demonstrate gang affiliation pursuant to the rule and the note following the rule. Well, I don't know if it has to – I don't mean to quibble, Judge. I don't know if it has to demonstrate gang affiliation. Support the inference. Yes, exactly. It has to support the inference that if an inmate walking by or in some posture sees these photographs in plaintiff's possession, hmm, plaintiff can only keep a limited amount of property on them. He's a prisoner. Every photo is – Would you look at page 25 of your brief? Yes. At the bottom of page 25 of your brief, you make the argument that you're making now and you say, gang or gang-related material is – that was in quotes, and then there's a new quotation – material that if observed in the inmate's possession could result in the inference being drawn about the inmate's gang affiliation. Now, both of those quotations are not quite accurate because of what they leave out. And what that clause at the end pertains to is not merely gang or gang-related material, but it's the – it's printed or handwritten gang or gang-related material. And then the note goes on to say printed or handwritten gang or gang-related is defined – it's defined in the note as a word that you left out there at the start. Just before material, it's written material. And then it goes on as you quote it. Is a photograph written material? I don't think a photograph is written material, but we – but the definition, the narrowing definition that you rely on here, which was also relied on in Booker, pertains only to written material, that which was relied on and which you rely on to say, well, it's not just gang or gang-related material. It's got to be material that supports the inference of affiliation with a gang. But that definition simply doesn't apply, or at least arguably doesn't apply to photographs because it only applies to written material. What about that? Well, a few responses, Your Honor. Number one, I agree with your suggestion to my adversary that this argument was not raised at the appellate stage. It wasn't – What about the merits of it? Going to the merits of it? We'll talk the merits of it first, and then we'll get to whether it's properly before us. Sure. I don't think Your Honor is parsing the definition correctly, at least not parsing the definition as docs, which certainly – which has deference in how it reads its own regs, is parsing it. There's a little bit of linguistic algebra that you have to do, but here's how you get there. If you look at the sentence about gang or gang-related material, it says, for purposes of this rule, printed or handwritten gang or gang-related material is written material that blah, blah, blah, blah, blah. So you've got a printed or written modifier before the phrase gang or gang-related material, and then you've got the written modifier before the clause that Your Honor just pointed out to me that starts with material. So you just subtract, if you will, the thing that refers to writing on either side, and what you're left with is gang or gang-related material is material that is observed in the inmate's possession. But why do you take out the word written? Right. Oh, well, you don't take it out just from one place. You take it out from either side. Because you're – maybe the quicker way to say some of this is printed material, is a photograph of this sort printed material? Photograph is certainly printed. Because when you go to the store with your – if you're a person up-to-date like me who has a digital kind of camera, and you have a little photo stick, and you go to a store because you want a photograph to put on the mantelpiece and display because you want to show your gang allegiance or for some other reason, and you ask them to make you such a thing, you call it a print, that kind of photograph. They print it for you, and then you take it home and have it, right? Yes, it is certainly printed material. I think – But it does say still – the rule says printed or handwritten material is written material. So it's – because printed also means what I did in first grade before I learned cursive, and that's another meaning of the word printed. And here, for whatever reason – I mean, this is not a model of beautiful dressmanship – the definition says printed or handwritten material is written material, meaning that perhaps they mean block-printed or cursive-written material. Perhaps they do, Your Honor, but again, one can extract from this definition – I mean, you've got adjectives on either side, printed or handwritten and then written, and so by necessary implication, if you take out those adjectives, the noun or the nominal phrases have to be equal, if you will, as well, meaning that – Why should you take them out? I mean, they're written into the rule, so what is the logic that says you should take them out? To understand the rule correctly, you have to eliminate some of its words. No, Your Honor, you don't have to eliminate any of the words. I'm just trying to say inartfully, perhaps even less artfully than the rule, that in describing gang or gang-related material, the application note talks about a particular instance of that material. It talks about printed or handwritten gang or gang-related material, but that does not mean that the standalone phrase gang or gang-related material has no meaning. It does have a meaning, and it has the meaning that follows the word written on the other side as well, namely – Have you contemplated this argument previously in writing your brief? For example, were you aware of this argument, this problem with the definition? Well, we were aware that it was raised below. I think we stopped contemplating it once we saw the appellant's opening brief and didn't see this argument in there. Because I'm curious as to – I mean, after the word is, and then you prepare to give the material, the word in the note is written material, and you left it out. So I'm curious why you left it out. All the more curious when you say you were aware of the argument at the time of writing the brief. Sure, Your Honor, we left it out for the reason that I'm trying and would love to keep trying to get across, that we believe that sentence of the application note talks about – it doesn't say gang or gang-related material has to be printed or written. It says printed or handwritten gang or gang-related material is X. It doesn't mean that gang or gang-related material itself, the core nominal phrase, doesn't have – The clause about could result in inference, the could result in inference clause, has no relationship to this rule except with respect to that's the only relationship of those words. Your Honor, I respectfully have to disagree. My clients don't read it that way. We read it as framing the definition of gang or gang-related material. No, don't you read it as framing the definition of what printed or handwritten gang or gang-related material is? I'm sorry, Your Honor, I don't think I understood your question. Don't you – this is a note referring to the last line of the rule itself. It says but not limited to printed or handwritten gang or gang-related material. Then it goes down to say what printed or gang or gang-related material is, and that is something that is written. But it doesn't say what printed or gang-related material is. I think that's absolutely right. That's why the adjective – Sorry, I guess I should – and I'm putting that as a question. Is that what you're trying to say? That is what I'm trying to say. Thank you so much for saying it. That's why the adjective is there because otherwise, just the phrase gang or gang-related material, which also has application here. I mean, if you look at the top – if you look at the rule itself, possess blah, blah, blah, blah, gang insignia or material. So gang material is in there. That has independent meaning, and it's not limited. The issue is not – the issue, if it's before us or before any court, is not whether gang or gang-related material that is, if observed in an inmate's possession, could result in an inference, et cetera. Not whether that is unconstitutionally vague, but whether simply a rule prohibiting gang or gang-related material end, whether that's unconstitutionally vague. No, Your Honor. That's not the issue as we see it. As we see it, the application note talks about printed or handwritten gang or gang-related material because that is one type of gang or gang-related material. There also can just be gang or gang-related material without that modifier. It's like saying a blue car is a blue thing that drives on the street. Anything that doesn't fall within that definition, then that definition just doesn't have a role in the vagueness challenge that's before us. I completely agree. Our position is that photographs, the printed material that is photographed, that are photographs, does fall within that definition, both because it is, if one thinks that the word printed is somehow inherently bound up in the notion of gang or gang-related material, or at least the gang or gang-related material that's the subject of the application note, photographs are certainly printed, certainly photographs that Petitioner had, they were hard- No question they're printed. No question they're printed. The question is whether they're written. They were not written. Again, I think what the application note is doing, and I do want to try one last time, and maybe this analogy will make things more clear, I hope. Suppose the application note said a blue car is a blue thing that has four means that a car is a thing that has four wheels and a steering wheel, etc., etc., etc. If you look at the application note, it is describing one particular type of gang or gang-related material. It says printed or handwritten gang or gang-related material is written X. But the inference that we're making, it's certainly a reasonable one as a state agency construing our own regs, is that gang or gang-related material is material. That, if observed in the inmate's possession, etc., etc., etc. I'll just put two final points on. It isn't all you're saying that in the rule itself, there is a freestanding reference to gang insignia or material. There is no specific definition in the application note that picks up that phrase and defines it. Instead, perhaps because of poor draftsmanship, there is a specific definition of the phrase printed or handwritten gang-related material, which is only a subset of gang material. And what you are saying is where would a reasonable prison adjudicator or enforcer look to understand what counts as gang material? And you're suggesting that one would look to the definition of the particular subset because there's nothing about that definition that is somehow conceptually applicable only to something that is in writing or has been produced by some form of printing process. Yes, exactly. If an inmate got a hold of some poster paints and painted a picture of one of these supposed hand signals and displayed it in his cell, and we were asking is that gang-related material or not, I think the agency would be hard-pressed to say if, for some reason, that did not this definition, it nevertheless is gang-related material. It has to be something that would meet this definition to come within the rule. Yes, that's absolutely right, because we read that rule as addressing a particular subset. And as one does with subsets, you can extract certain things to the broader set. And that's what we're doing. Exactly. And that's what we're doing here. And because there was no factual dispute. At any rate, there is no argument being advanced by the plaintiff on appeal of the nature that this rule is unconstitutionally vague because it does not incorporate this definition as applied to the photographs. To the contrary, they are attacking that very definition and saying that is what is vague about it, that it gives rise to this so-called double inference where you have to anticipate what an inmate, another inmate, is going to think about your painting, photograph, piece of a magazine article, written material, or whatever. That's what they're saying is one of the things – two things they're saying are unconstitutional – the definition of a gang in the first place and this very definition, which they seem to take as applicable to the photographs. Yes, that's certainly how we read their opening brief. I think all the more so, given that the argument was made below so they knew about it. It seems like it was abandoned here, not just not conceived of in the first instance. And under that definition, the question for the court is, again, with no factual dispute, that as a factual matter, at least some of these photographs, a critical mass of these photographs, can be fairly viewed as depicting crypts. Well, so far we've got one of them could be – was viewed by two different correction officer witnesses or prison employee witnesses as clearly depicting a crypt-related – Yes, that's right. I think that's the strongest example, that C's over B's example. That actually came from the second hearing. What do you say about their argument that these have been approved over 10 years by innumerable prison officials? I think what I would say is exactly what you seem to suggest in your question to my friend to the other side, which is that there was no affirmative approval. There's no evidence of routine searches upon transfer of prisoners from one facility to another. Does occur? I'm sorry? Do those occur? Yes, those searches do occur. For every inmate who has moved from one facility to the next. Yes, there is a search. The level of invasiveness of that search, if you look at the – I'm not sure if it's in this record, but there are DOCS directives that govern that. Right, and forms that the searchers have to fill out. The forms actually don't ask for a catalog of all the details of, say, each photograph. It really is more surface level. How many photographs are there? How many postage stamps are there? It's with an inventory. It's not a description. Here, though, what prompted the more intensive search and why there was an affirmative look at that precipitated this case is a fight that plaintiff was involved in that was suspected of being gang-related. So it's quite different from one of these routine facility-to-facility transfer searches where it's certainly possible and perhaps likely that a fine-toothed comb would not be taken looking at the four corners of every single photograph. Also failing to demonstrate any sort of arbitrary enforcement or confusion is the fact that at the second hearing, three DOCS employees interpreted photo two, what was labeled as photo two in the second hearing, differently. What happened in that case, in that hearing, each DOCS employee identified a somewhat different crip sign, but that doesn't show arbitrariness of the rule. That might show that they have an eyesight problem. It might show that they're focusing on different people in the photograph to show that the rule is being applied arbitrarily and is vague. What you would need to show is that the witnesses all identified the same crip sign, but disagreed as a legal matter, as a disciplinary matter, whether the rule was violated based upon that crip sign. And we don't have any sort of evidence like that in the record here. I do want to address, and I think this goes back to the point that's being raised about hand signs and photographs and the like. Plaintiffs in their reply brief talked about a 2001 Deputy Commissioner memo addressing a prior version of the gang rule, the gang paraphernalia, gang material rule. And it's true that the Deputy Commissioner in that memorandum said that we don't interpret the rule to cover gang signs. And that was the predecessor rule. But the predecessor rule had quite different language. The predecessor rule did not have this inmate inference test. And if you look at the New York State Register, the analog of the Federal Register, for when the new rule, the current rule that this case is being adjudicated under, was promulgated, some of the language in terms of why DOCS wanted to beef up the rule is to cast a broader net. Now, to be sure, they didn't refer just to photographs or say that we want to catch hand signals that we weren't catching before. But the new rule is an expansion of that rule, not a retrenchment of it. So that all points in the direction of parsing the rule, as my clients do and as Judge Lynch helpfully offered that one could do. I do want to move on to the due process arguments that I think are somewhat separate from vagueness. There's a witness refusal issue regarding the first hearing. As I read a reply brief at pages 15 to 16, the plaintiff concedes that that was barred by collateral estoppel and is attacking only the due process violations that stemmed from the second hearing. But as I might have said before, as an aside, everything that happened at the second hearing is harmless and certainly cannot give rise to a lawsuit for monetary damages under 1983. The second hearing resulted in no additional punishment and the underlying guilty finding, even though it was affirmed, if you will, at the second hearing, was subsequently expunged. So there was no additional punishment, no additional wrongfulness allegedly precipitated by the results of the second hearing and what followed. I think there's been some question as to, again, looking at the definition of gang material that the plaintiff is challenging on appeal, whether it incorporates just an unbridled two-step inference, whether it's any inference that any hypothetical inmate could make ever. We think, for the reasons explained in our brief, that there's a reasonableness test baked into the regulation. We think that's what could infer fairly means. But even if you disagree with me on that, even if you think there is no reasonableness requirement baked into the rule, the fact is that based upon the undisputed testimony below that plaintiff has, again, never in a factual way taken issue with, his photos are fairly viewed as depicting Cripp's hand signals. And as a result, an inmate who sees the photos in plaintiff's possession reasonably could infer, whether the inference has to be reasonable or not. In fact, he reasonably could infer, in all events, that plaintiff has some Cripp's allegiance. And that shows that plaintiff had the requisite reasonable opportunity to know that the photos were prohibited under the gang rule. So what you would like this regulation to communicate is that the words gang insignia or materials are materials if observed in an inmate's possession could result in an inference being drawn. A reasonable. You would prefer to say a reasonable inference or a fair inference being drawn. That's what you're saying it means, but it would be clearer if it did both. And you're also saying that you think it also does mean the first part, that it defines gang insignia or materials. But the way you would like us to read this is that gang insignia or materials are materials that, if observed in the inmate's possession, could result in a reasonable inference being drawn about the inmate's gang affiliation. That's what you're saying. It's properly interpreted to me. I think I can give a yes answer to both of those questions. But I think, at least in our view, the simpler... You're saying that the words printed or written, the words printed or handwritten, and then later written, that all those words are just clutter. What you really mean is that the gang and gang-related materials should be read in conjunction with materials supporting an inference if found in the inmate's possession, a reasonable inference of gang affiliation. What obstacles would be involved in changing the rule so that it says what you want it to say? Well, preliminarily, yes to the end of your question, but no to the beginning. We think we get there, as I was discussing with Judge Lynch, through the take a subset and extrapolate to what it means broader. The definition of blue cars, that has bearing on what a definition of a car is. But to directly respond to your question, these rules are rules that are promulgated by DOCS. They can certainly be changed based upon a notice and comment procedure. I think some types of the rules can even be changed. It can be amended on a less formal notice than that. But this is how DOCS has applied the rule consistently. Again, one of the reasons what constitutional requirements relate to what's written in the rule, the constitutional requirements relate to, they're supposed to be for the protection of people who are adversely affected, right? They're supposed to be so people can know by looking at a rule, am I doing something prohibited? Am I doing something that's going to be getting me thrown into the shoe for six months? And you're asking an awful lot if you're asking an inmate to go through the extraordinarily complicated mental processes that you described to us that are necessary to reach the definition that you want to be the definition of the rule. Just to say that that's the way it's been interpreted by the prison administration authorities in the past, how is the prisoner supposed to know that? Well, as to how a general prisoner is supposed to know that? A specific prisoner. Okay, well, exactly. Let's take plaintiff. Plaintiff is supposed to know that because by his own testimony in his deposition, he has been subject to the application of this rule for, quote, the exact same misbehavior as alleged here, namely for things that are not exclusively written material that are photographs. He says exact same misbehavior, and he was charged under docs, and that went to a disciplinary hearing. A prisoner who is, who may be a blood or a crip, is in the prisoner and he has these photographs. Shouldn't he be on notice from reading the rules? Shouldn't he be on notice by seeing what's written there as to whether he's in violation of a rule or not? Yeah. Without needing to know what the history has been of when the administration has prisoners and when they haven't? He absolutely should be on notice, and if this were an as-applied challenge by a different prisoner, by a prisoner without this sort of personal history of having... I understand your argument that it wasn't raised on appeal and so forth, but I'm talking about the future. Wouldn't it be desirable that somebody not have to go through the mental gymnastics that you argued to understand what this rule does and doesn't prohibit? Yes, it would absolutely be desirable. I don't... Whether or not prisoners go through mental gymnastics in trying to parse this rule as a general matter, I think part of what the question implies, or at least what it implies to me, is that if the attorney general has any influence over docs, that one way of protecting your client from future lawsuits, particularly about whether or not this case is won or lost, one way of helping to clarify the rule would be to redraft it to say exactly what you say it implicitly means, and that's at least one message that could be helpfully taken back to your client about how this rule could be drafted in the future. No doubt someone would then challenge that rule by finding something in it that he or she regarded as vague, and that may succeed or not succeed, but at least those modifications would be helpful. That's, I think, a part of the message here. Yeah, and that message is received and understood, and I will take that back to Albany. I will say, though, again, just in closing, what I hope is in closing, you'll tell me if it is or isn't, is that in this as-applied challenge, when we look at the circumstances of this particular prisoner for the four corners of this case, one thing we do have to consider with respect to the enforcement of the rule against him in 2014 or 2016 was his, whenever it was, was the prior, three prior infractions he had, at least one of them was, according to his own testimony and his deposition, for the, quote, exact same misbehavior of the nature that happened here. So I don't think the successful way to challenge that is this as-applied challenge, but I do take your point, Your Honor, and I don't want to be seen as resisting that the rule could be more clearly drafted, and it would certainly save the lawyers in the if it were, so I think, I certainly see how that can be in everybody's interest. Thank you, Mr. Ginsburg. Ms. Boies-Kipsky. May it please the Court, as Your Honor stated earlier, the exercise that our friendly argument and Your Honors engaged in clarifying what this rule means, not just based on whether photographs are included as part of the word material, but also as to what means gang-related, not just gang, but what gang-related means. In this case, it meant the picture of a little girl with a ponytail with blue beads on her head. The opposing counsel states that Mr. Williams had violated this rule before, however, this violation was not the exact same behavior. He received a letter with a written word that was code, allegedly, for gang material. That is fundamentally different from the family photos that he had possessed, and without a notice that these photographs violated this rule somehow. Opposing counsel says that there's no way to narrow the meaning of this rule, but in our brief, we provided an example, the Federal Violence Gang Act. This act, it's in page 26 of the appellant's brief, however, it defines gang in a way that determines the criminal purpose. It has minimum constituency, it's bounded by a temporal element, and it's standardized the based on the term of what materials means, but what gang means. And that general definition doesn't talk about gang materials, that's about what's a gang. That's right, Your Honor, and as part of our argument, we contend that gang alone is broadly defined, that shared... You may have noticed that most of the discussion with your adversary, giving him a hard time, was focused on the gang-related materials part, as to what does or does not indicate affiliation with the gang. That's correct, Your Honor. However, a picture of children at birthday parties cannot be considered gang-related material. Otherwise, no inmate would be entitled to have family photos that somehow are assumed to be connected to a gang. All this discussion is based on the assumption that Mr. Williams is a member of the crimp, and nothing in the record supports that. Your Honor, why do you say a photograph of children at a birthday party can't be gang-related materials? It may be a little bit far-fetched, but not all that far-fetched. If somebody is, in fact, a member of the gang, and that's a very important part of his life, and he teaches his children to make a gang sign, like C over B, and children at the birthday party are told by their parents, okay, now, make the sign for the camera, and they take the picture of them, why isn't that photograph gang-related material? What are the definitions? The fact that it's at a children's birthday party doesn't mean that it can't be. Or if there's a birthday cake that has the gang sign on it, and that birthday cake with the gang sign on it is plainly visible in the photograph, why can't that be gang-related material? I agree with you, Your Honor. However, in this case, this photograph, where not even trained officials could determine that there was gang signs, could not be considered gang-related. In fact, opposing counsel... Was that the photograph that your adversary pointed at? Yes, Your Honor. The one with the C over B, with the hands... Yes. ...clearly above the other. That's on page 121 of the appellant's brief appendix. Upside-down. I'm sorry? Upside-down on page 121, yes. Yes. And there, Officer Isabella, although he stated that this may be a set of hands with a middle finger standing over the other one, he said, it's hard to tell. And then Officer Kober, in the same picture, stated, two people are flashing gang signs, but he refers to, one, the sleeveless shirt, the guy with the sleeveless shirt has a C, and then he says, all of them are dressed in blue. However, in this picture, we can see that these colors are, the colors of these two people are white. These inconsistencies are evidence that, at least for the record, in this case, this could not be considered gang-related material. To punish an image for six months in solitary consignment, and even if they were, Mr. Williams could not have noticed, given the language of this rule. Additionally, Mr. Williams has definitely contested that these are gang signs. On page 132 of the appellant's brief appendix, he asks the officers whether that's just the middle finger as a profanity, not as a gang sign. And so there are material questions of fact as to whether these pictures depict gang-related materials for a jury to decide. Additionally- But that's not the issue, is it? The issue isn't for trial. I'm not sure what the issue for trial would be, actually, but the issue for the district court, I thought, was whether the rule is not a specific challenge to, was Mr. Williams properly found to have violated the regulation based on this picture? Because the answer to that could very well be yes, and you would still win if the rule was unconstitutionally vague. That's right, Your Honor. There's two issues, a due process one, which goes to the determination of whether the correctional hearing officers were reasonable, and whether this rule on its own is vague and thus did not provide notice to Mr. Williams. You're saying there's a constitutional claim, assuming that the regulation is found to be not vague, that every prisoner who says, but I was wrongly convicted at the hearing because this isn't in fact a gang sign, has a federal constitutional claim? No, Your Honor, that's not what we're arguing. What we're arguing is that the second hearing was just a poor attempt to cure the deficiencies of the first one, which is the one that led to Mr. Williams' solitary confinement sentence. This deficiency lies on the fact that Mr. Williams had a due process right to provide documentary evidence to defend himself. Remind me when that first hearing took place, please. Excuse me? Remind me when that first hearing took place. In 2014, I believe four days after Mr. Williams' photographs were confiscated. But we are now well beyond rebuttal, aren't we? And isn't this an argument that was not talked about in your original argument or in Mr. Ginsburg's argument? No, Your Honor, I believe that the first hearing was smooth and that there were no issues as to the second hearing. However, as per Wall v. McDonnell, Mr. Williams had a due process right to provide... The adversary said, if I understood him correctly, was that there were no adverse consequences to the second hearing because the full penalty of the six months in shoe had already been served. There was no additional time. When it was overturned and expunged, even if there were defects in the second hearing, they didn't have any consequences. Well, the second hearing was meant to cure the deficiencies of the first one. Mr. Williams... Just please tell me which hearing do you think we should be examining for deficiency? The second hearing. The second hearing, not the first hearing. So if, for example, I mean, there was a challenge originally that he wasn't allowed to call certain witnesses, he did not call those witnesses at all or seek to call them at the second hearing, even after the state court had said he should have been allowed to call them. Yes, Your Honor. But that's not... That's out of the case now. So now we're supposed to address, were there procedural deficiencies at the second hearing? Is that your position? Yes, Your Honor. Yes. So your view is the first hearing is moot and the second hearing is what we should examine for procedural deficiency. Well, we're not saying that it's moot because he was deprived of... No, I know, no, no. For procedural deficiency. Yes, yes. Only the second hearing. And that's because he had a right to present documentary evidence to defend himself. He... And why do we care about that since that issue was mooted by the expungement and decision to reverse that as a separate problem? If we're saying there was a procedural irregularity in the second hearing, but the second hearing then itself got reversed and nothing happened to him that wouldn't have happened to him already, why do we have to worry about whether he had a right to put the photograph of the Pope or whatever into evidence at the second hearing? Why does that matter to anything? What caused him damage about that failed hearing if it was a failure? Well, because he had already served the sentence. Yes, of course. And we cannot put that aside because that was his liberty interest. I understand that. I understand. But what does that have to do with the second hearing? The problem is if there's something wrong with the rule that sent him to shoe for six months, it doesn't matter what happened at either hearing. What matters is, is the rule constitutional. If the question is somehow, and maybe the first hearing isn't moot. I mean, I don't know. If you're looking at a procedural violation that sent him to the shoe, that must have happened the first time. The second time, it doesn't send him to the shoe. He's already been there and he's not going back. And that got expunged anyway. So the extent there's any reputational or other damage where his record is impacted by the fact that there was a problem at the second hearing, that's over. So what if anything is the damage that is occasioned to him by the procedure, any procedural error that happened at the second hearing? The fact that based on the second hearing, the sentence was affirmed and he carried that sentence for two additional years until Director Housing and Inmate Disciplinary Program, Venezuela reversed two years later. He had this in his record for two years. And that sentence that he was subjected to based on a deficient hearing, he had to live with it for two years. And that has some damage here. When due process violations are... Okay. So just so I understand, the damage that he suffered from a procedural error at the second hearing is that he was not immediately vindicated, as it were, with respect to the sentence he had served before. Yes, Your Honor. Now, how would that work? Let's assume he hadn't been subject to this stuff in the first instance. Just an ordinary prisoner, first time up, he has a hearing. The hearing says, oh, you violated this rule. And we're just going to put no shoe, we're just going to put something in your file to the effect you violated that rule. And then later, the prison authorities on appeal say, reversed because he's not really guilty anyway, expunged. You're saying that there would be a valid due process suit by an inmate for the procedural errors that were made and not corrected until later in the appeals process? Not in that case, because constitutional rights were not violated. No, no, no, constitutional rights. The same violations, whatever you say, the procedural constitutional violations at the hearing that he had, exact same procedural violations. You're saying the fact that an inmate for two years labored under the stigma and whatever consequences there are in the prison of having that violation can still be the subject of a federal constitutional lawsuit, notwithstanding that eventually the prison authorities overturned that determination? Well, here also, Mr. Williams was deprived of his right to property to possess this photograph. And he was deprived of that right for two years until the second hearing was reversed. So there was an additional- Any procedural violation that takes place in a prison hearing that has any consequence at all is actionable for those consequences, notwithstanding that if the inmate follows the thing that we make him do of going through the process, succeeds in getting the and the record expunged? No, Your Honor. No? Okay. Then I'm having trouble understanding why it does for him. But the deprivation of a property right in this case was a violation of his constitutional rights, not just about any right. Even if it's corrected? Even if it's- Even if it's corrected? After two years, after the fact, the same way that this- Through the appeals process. I mean, God knows we're here talking about this whole thing six or seven years later. Law takes time. But you're saying that- That's correct, Your Honor. But he's looking for some kind of relief, given that based on the first procedural hearing- That's a different story. But it- Look, look, please. We've got a lot on our plate here. The big thing we have on our plate is whether this whole rule goes out the window, and he should never have suffered anything at all, and he suffered a very serious consequence as a result of that. And now you're here spending 10 minutes on rebuttal, revisiting the issue that nobody really talked very much about before, but that is adequately discussed in your brief, as to the violation of a procedural rule at a hearing that the prison authorities themselves reversed. You're correct, Your Honor. Going back- I'm not asking you necessarily to withdraw it. I'm just trying to point out there are big things and small things, and maybe how much we want to talk about something in oral argument is to focus on the big things. Absolutely, Your Honor. And that brings me back to whether this rule was vague or not as applied. Here- Is there something else you need to say about that that you haven't said already, now that you're 14 minutes over the two minutes that you reserved for rebuttal? Yes. I just want to emphasize that penological needs to police certain behavior cannot trump constitutional rights, and punishing someone under a vague rule, he has no notice as to what constitutes gang-related, and that his family photos could be considered under it, especially because trained officials cannot discern these photographs, was a constitutional right violation, and this rule is vague based on the facts of this case. Thank you, Ms. Boyes-Gimsky. And thank you both. We'll reserve decision in this case.